**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE**

**CIVIL ACTION NO. 19-81-DLB-EBA**

**COMPREHENSIVE PHARMACY SERVICES, LLC**            **PLAINTIFF**

v.            **MEMORANDUM OPINION AND ORDER**

**HIGHLANDS HOSPITAL CORPORATION, et al.**            **DEFENDANTS**

\* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. # 30), which has been fully briefed (Docs. # 35 and # 38) and is now ripe for the Court's review. For the reasons stated herein, Plaintiff's Motion is **granted**.

**I.**      **FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of a contract between Plaintiff, Comprehensive Pharmacy Services, LLC ("Comprehensive Pharmacy"),[1] and Defendant, Highlands Hospital Corporation d/b/a Highlands Regional Medical Center ("Highlands Hospital"). (Doc. # 30-1). Pursuant to a Pharmacy Services Agreement (the "Agreement"), Comprehensive Pharmacy agreed to manage the pharmacy facilities of Highlands Hospital, supplying employees and otherwise managing the pharmacy operations for the Hospital in exchange for a monthly fee of $101,550, to be increased annually. (*Id.*). The Agreement, entered on May 23, 2012, was for a three-year term, ending on May 31, 2015. (*Id.* at 6). The parties later entered into a First Supplement extending the relationship through May

---

[1]      By Agreed Order, Plaintiff Comprehensive Pharmacy Services, LLC was substituted for the former Plaintiff, Pharmacy Systems, Inc., due to a merger. (Doc. # 43).

1

31, 2018, (*id.* at 15), and a Third Supplement[2] extending the Agreement through May 31, 2019, (*id.* at 17).  Relevant to Plaintiff's breach of contract claim, the Third Supplement, effective November 1, 2017, contained an automatic renewal provision, which provided as follows:

> **Term of Agreement.** The Term of the Agreement shall be extended through May 31, 2019, and thereafter shall be automatically renewed for successive periods of three (3) years each unless either party gives the other party notice of termination at least ninety (90) days prior to May 31, 2019, or any subsequent renewal term, as the case may be.

(*Id.* at 17).  Further, the Agreement specifies that "[a]ll notices . . . required or desired to be given to either party under this agreement shall be given in writing."  (*Id.* at 7).

In September 2017, prior to entry of the Third Supplement, Highlands Hospital publicly announced its plans to merge with Defendant Appalachian Regional Healthcare, Inc. ("ARH").  (Doc. # 30-2).  In April 2019, Highlands Hospital entered into an Asset Purchase Agreement with Defendant ARH Tug Valley Health Services, Inc. ("Tug Valley").[3]  (Doc. # 30-4).  In addition, Highlands Hospital and Tug Valley entered a Side Letter Agreement and an Assignment and Assumption Agreement in July 2019.  (Docs. # 30-5 and 30-6).

In a letter dated May 21, 2019, Highlands Hospital informed Comprehensive Pharmacy of its intent to terminate the Pharmacy Services Agreement with termination effective on August 1, 2019, the date of the anticipated sale of Highlands Hospital to ARH.  (Doc. # 30-7).  The parties do not dispute that this written notice was untimely under the terms of the automatic renewal provision, which required that "notice of termination [be

---

[2]  The parties also agreed to a Second Supplement regarding the supply of additional staff. (Doc. # 30-1 at 16).

[3]  Tug Valley is a wholly owned subsidiary of ARH.  (Doc. # 1 ¶ 5).

provided] at least ninety (90) days prior to May 31, 2019, or any subsequent renewal term." (Docs. # 30 at 3, 35 at 7-8, and 30-1 at 17). Ninety days prior to May 31, 2019 would have been March 2, 2019. Thus, according to Plaintiff, without timely notice, the automatic renewal provision was triggered, renewing the Agreement for a new three-year term. (Doc. # 30 at 3). By discontinuing their obligations under the Agreement and preventing Plaintiff from further performance under the Agreement as of August 1, 2019, Highlands Hospital allegedly breached the Agreement, resulting in damages to Comprehensive Pharmacy in the amount of $1,199,863.17 based on Plaintiff's projected profits for the remainder of the renewed, three-year term, as well as wages paid to Comprehensive Pharmacy employees through the term of their employment agreements. (*Id.* at 3-4).

In its Complaint, Plaintiff alleges several claims including breach of contract against Highlands Hospital, ARH, and Tug Valley, (Counts I and II) (Doc. # 1 ¶¶ 50-69), successor liability against ARH and Tug Valley (Count III) (*id.* ¶¶ 70-82), intentional and tortious interference with a contract against ARH and Tug Valley, (Counts IV and V) (*id.* ¶¶ 83-98), intentional interference with contractual performance against ARH and Tug Valley, (Count VI) (*id.* ¶¶ 99-104), and breach of implied duty to act in good faith against Highlands Hospital, ARH, and Tug Valley, (Count VII) (*id.* ¶¶ 105-109). Plaintiff seeks both declaratory relief, (Count VIII), and damages. (*Id.* at 15-18).[4]

Plaintiff now moves for summary judgment with respect to its breach of contract claims asserted against Highlands Hospital and against Tug Valley, which allegedly assumed liability for Highlands' breach of the Agreement. (Doc. # 30 at 1).

---

[4] By way of an Agreed Order of Partial Dismissal, Plaintiff dismissed its claims of intentional interference with its employment agreements. (Doc. # 40).

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when the record reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). Once a party files a properly-supported motion for summary judgment, by either affirmatively negating an essential element of the non-moving party's claim or establishing an affirmative defense, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks omitted). However, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Id*. at 252.

The Court must "accept [the non-moving party's] evidence as true and draw all reasonable inferences in his favor." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 255). The Court may not "make credibility determinations" or "weigh the evidence when determining whether an issue of fact remains for trial." *Id*. (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52). If there is a dispute over facts that might affect the

4

outcome of the case under governing law, the entry of summary judgment is precluded. *Anderson*, 477 U.S. at 248.

### 1. Breach

Plaintiff seeks summary judgment on its breach of contract claims asserted against Highlands Hospital and Tug Valley. (Doc. # 30 at 5-8). Plaintiff's breach of contract claims are based on Highlands Hospital's failure to provide timely notice of termination under the automatic renewal provision contained in the Third Supplement to the Agreement. (*Id.* at 7-8). According to Plaintiff, the Agreement automatically renewed for a new, three-year term and Highlands Hospital breached the Agreement by subsequently preventing Plaintiff from continuing to provide pharmacy services under the Agreement and by Highlands' discontinuation of their monthly payments and other obligations under the Agreement. (Docs. # 30 at 5-8 and 30-3 ¶ 8). As noted above, Plaintiff seeks damages consisting of lost profits for the remainder of the renewed three-year term and costs Plaintiff expended to fulfill its existing employee contracts. (Doc. # 30 at 3-4).

To succeed on a breach of contract claim, a plaintiff must demonstrate the existence of a contract, breach of that contract, and damages resulting from the breach. *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009). When a contract is unambiguous, meaning it is not subject to multiple, reasonable interpretations, it "must be enforced according to its terms." *Big Sandy Co., L.P. v. EQT Gatherings, LLC*, 545 S.W.3d 842, 844-45 (Ky. 2018) (quoting *Bd. of Trs. of Ky. Sch. Bds. Ins. Tr. v. Pope*, 528 S.W.3d 901, 906 (Ky. 2017)); *see also Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) ("[I]n the absence of ambiguity a written instrument will

5

be enforced strictly according to its terms[.]" (quoting *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966))).

For the reasons stated below, the Court finds find no dispute of material fact regarding whether Highlands Hospital breached its Agreement with Comprehensive Pharmacy. The parties do not dispute the existence of the Agreement, nor do they contend that any aspect of the Agreement is ambiguous. The plain language of the automatic renewal provision states that the term of the Agreement shall be "extended through May 31, 2019, and thereafter shall be automatically renewed for successive periods of three (3) years each unless either party gives the other party notice of termination at least ninety (90) days prior to May 31, 2019." (Doc. # 30-1 at 17). The Agreement also specifies that all notices "shall be given in writing." (*Id.* at 7).

Importantly, Defendants do not contest that Highlands Hospital did not provide written notice of termination by the March 2, 2019 deadline (90 days prior to May 31, 2019), nor do Defendants dispute that Highlands' written notice of termination provided on May 21, 2019 was untimely under the terms of the automatic renewal provision. (Docs. # 30 at 3 and 35 at 7-8). When the deadline to provide notice of termination passed, the Agreement automatically renewed for a new, three-year term. *See Distillery Rectifying & Wine Workers Int'l Union of Am. v. Brown-Forman Distillers Corp.*, 213 S.W.2d 610, 613-14 (Ky. 1948). Further, Defendants do not dispute that as of August 1, 2019, Highlands Hospital unilaterally discontinued its obligations under the Agreement and prevented Plaintiff from further performance. (*See generally* Doc. # 35). Thus, Highlands Hospital breached the Agreement by unilaterally terminating the Agreement after the deadline to

6

provide notice of termination had passed, and the Agreement had automatically renewed for a new three-year period.

Although Defendants do not dispute the facts discussed above, Defendants argue that "[b]efore recovering any lost profits on its breach of contract claim, [Plaintiff] must prove that it was actually prejudiced by [Highlands Hospital's] late written notice." (Doc. # 35 at 7). In other words, Defendants assert that Plaintiff must show it was prejudiced by receiving notice of Defendants' intent to terminate the Agreement on May 21, 2019 rather than by March 2, 2019—the deadline to provide notice of termination under the Agreement. However, Kentucky law does not require that Plaintiff make this additional showing of prejudice. In the context of liability insurance contracts, the Supreme Court of Kentucky has found that when a claimant has failed to give timely notice of a loss to his insurance carrier, the insurance carrier is not automatically absolved of its duty to cover the claim unless the carrier can demonstrate that that it was prejudiced by the delay. *Jones v. Bituminous Cas. Corp.*, 821 S.W.2d 798, 801-803 (Ky. 1991). Defendants' attempt to extend this principle beyond the insurance context is not persuasive.

None of the four reasons for the prejudice requirement articulated in *Jones* apply in this case. In *Jones*, the court first reasoned that standard form insurance agreements are generally "contracts of adhesions," as they are not negotiated, and that "[a]bsent language in the contract clearly spelling out the meaning and parameters of prompt notice and automatic forfeiture consequences" such agreements contain a latent ambiguity that should be construed in the insured's favor. *Id.* at 801-02. The Agreement for the provision of pharmacy services between Comprehensive Pharmacy and Highlands Hospital is one that was negotiated between two sophisticated parties. In addition, the Third Supplement

7

unambiguously puts both parties on alert that the Agreement "shall be *automatically renewed* for successive periods of three (3) years each *unless* either party gives the other party notice of termination at least ninety (90) days prior to May 31, 2019." (Doc. # 30-1 at 17) (emphasis added). Thus, unlike the contract in *Jones* which merely required "prompt" notification of a loss, the Agreement at issue here expressly noted the automatic nature of the renewal and provided a specific deadline by which notice must be provided by either side.

Second, *Jones* reasoned that "the doctrine of reasonable expectations" counsels in favor of a prejudice requirement because "the insured is entitled to all the coverage he may reasonably expect to be provided under the policy," such that "[o]nly an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation." 821 S.W.2d at 802. Yet, in this case, Highlands Hospital could not reasonably expect to have the ability to unilaterally terminate the Agreement after missing the termination deadline given both the conspicuous nature of the automatic renewal provision (agreed to in a stand alone supplement) and the provision's unambiguous spelling out of the consequence of missing the deadline— automatic renewal. (Doc. # 30-1 at 17). Likewise, it was reasonable for Plaintiff to assume that Highlands Hospital assented to the renewal when no written notice of termination was received by the deadline. *See Distillery Rectifying*, 213 S.W.2d at 613.

The third rationale from *Jones* obviously does not apply here. The *Jones* court further reasoned that because state law required the public liability insurance policy at issue, the court should consider "the reasonableness of the [notice] condition as a limitation on public policy as opposed to one of strict contract considerations between

8

private parties where no public interest is involved." 821 S.W.2d at 802. The final rationale from *Jones* is equally inapplicable. As a fourth reason in support of applying a prejudice requirement, the court in *Jones* explained that because the claimant had been paying premiums with the expectation of coverage, "in the absence of prejudice a strict forfeiture clause simply provides the insurance company with a windfall." *Id.* Defendants allege that strictly applying the automatic renewal provision without requiring a showing of prejudice would similarly result in a windfall to Plaintiff. (Doc. # 35 at 7-8). However, Highlands Hospital was aware of the risk of providing late notice of termination—a provision that applied equally to both parties—at the time it agreed to the Third Supplement. Thus, enforcing the terms of the Agreement here does not inequitably shift the risks taken on by either party and merely holds the parties to the bargain they agreed upon. *See Ashland Hosp. Corp. v. RLI Ins. Co.*, No. 13-143-DLB-EBA, 2015 WL 1223675, at *12 (E.D. Ky. Mar. 17, 2015), *aff'd*, 632 F. App'x 271 (6th Cir. 2016).

Defendants point to one case, *Appalachian Regional Healthcare, Inc. v. U.S. Nursing Corp.*, No. 7:14-122-KKC-EBA, 2018 WL 2088869 (E.D. Ky. May 4, 2018), applying the notice-prejudice requirement outside the insurance context in support of their argument that the principle should be extended to the instant case. (Doc. # 35 at 7). *Appalachian Regional* is clearly distinguishable from the situation here. That case involved the defendant, U.S. Nursing's, agreement to indemnify and defend the plaintiff, Appalachian Regional Healthcare, for the negligence or intentional acts or omissions of its employees. 2018 WL 2088869, at *3, *7. U.S. Nursing "argue[d] that its obligation to defendant Appalachian was never triggered because Appalachian did not 'tender a request for defense'" or "otherwise notify U.S. Nursing" of a pending lawsuit against it. *Id.*

9

The court found that a showing of prejudice was necessary as it saw "no reason U.S. Nursing would not have an insurer's obligation to prove prejudice from Appalachian's failure to tender its defense." *Id.* at *9. As the court acknowledged, the agreement to defend/indemnify was analogous to an insurance contract, with U.S. Nursing agreeing in advance to defend the plaintiff in certain, future lawsuits. *Id.* Further, there was no express notice requirement in the agreement at issue. *Id.* Accordingly, the facts in *Appalachian* differ significantly from those presented here, where the Court is examining an agreement for the provision of pharmacy services in exchange for a fee—nothing remotely similar to an insurance or indemnity agreement—which contained an express and definitive notice requirement.

Furthermore, courts have declined to apply the notice-prejudice requirement defined in *Jones* even to cases involving certain types of insurance contracts where the rationale from *Jones* would be inapplicable. *See, e.g.*, *Ashland Hosp. Corp.*, 2015 WL 1223675, at *11-12 (declining to extend notice-prejudice requirement to a "claims-made-and-reported" insurance policy that had been negotiated between two sophisticated parties and included an express notice requirement as a condition precedent); *Stacy v. Appalachian Reg'l Healthcare, Inc.*, 259 F. Supp. 3d 644, 653-54 (E.D. Ky. 2017) ("Kentucky's notice-prejudice rule applies in a specific and limited set of circumstances— initial denials of claims for untimeliness under occurrence insurance policies.") (collecting cases). Thus, for the reasons stated above, the Court declines to extend the notice-prejudice requirement to the parties' Agreement for services that was negotiated between sophisticated parties and contained an express and well-defined notice requirement.

Plaintiff further argues that Defendant Tug Valley is also liable to Comprehensive Pharmacy for Highlands Hospital's breach of the Agreement because Tug Valley assumed liability for the breach through its Asset Purchase Agreement, Side Letter Agreement, and Assignment and Assumption Agreement with Highlands Hospital. (Docs. # 30 at 10-11, 30-4, 30-5, and 30-6). In April 2019 Highlands Hospital entered into an Asset Purchase Agreement with Tug Valley involving the sale and transfer of its assets. (Doc. # 30-4). Subsequently, in July 2019, the parties entered a separate Side Letter Agreement which amended the "Assumed Liabilities" provision in the original Asset Purchase Agreement to include Tug Valley's assumption of "all liabilities arising out of the termination or rejection of [Highlands Hospital's] agreements, leases or instruments made at the request of [Tug Valley] . . . ." (Doc. # 30-5 at 10). According to Plaintiff, § 6.10 of the Asset Purchase Agreement required Highlands Hospital to terminate its Agreement with Comprehensive Pharmacy. (Doc. # 30 at 11, 30-4 §§ 1.2(c), 6.10, Schedule 1.1(b), and 30-5 at 10).

Alternatively, Plaintiff alleges that a later Assignment and Assumption Agreement renders Tug Valley liable for the breach, as that Agreement states that "[t]he parties acknowledge that the Termination Liabilities constitute Assumed Liabilities for purposes of the Purchase Agreement" and that "[Tug Valley] assumes the Termination Liabilities and agrees to satisfy such liabilities upon such terms and conditions as it sees fit . . . ." (Doc. # 30-6 § 3). Defendants do not acknowledge either of these arguments in any way in their joint Response to Plaintiff's Motion. (Doc. # 35). Accordingly, the Court treats Defendants' lack of response as a concession of the validity of Plaintiff's argument that Tug Valley assumed liability for Highlands' breach. *See United States v. Osborne*, 807

F. App'x 511, 526 (6th Cir. 2020) (citing *Hussam F. v. Sessions*, 897 F.3d 707, 720 (6th Cir. 2018)); *see also Reitz v. Ford Motor Co.*, No. 3:16-cv-765-CRS, 2019 WL 4675387, at *6 (W.D. Ky. Sept. 25, 2019). In sum, the Court finds no dispute of material fact regarding Highlands Hospitals' breach of its Agreement with Comprehensive Pharmacy or Tug Valley's assumption of liability for the breach.

### 2. *Damages*

Having found that Highlands Hospital breached the Agreement, the next issue to consider is whether Plaintiff has demonstrated it suffered damages as a result of the breach and, if so, whether a dispute of fact remains concerning the amount of damages Plaintiff is entitled to recover. Under Kentucky law, "[i]n the case of a breach of contract, the goal of compensation is not the mere restoration to a former position, as in tort, but the awarding of a sum which is the equivalent of performance of the bargain—the attempt to place the plaintiff in the position he would be in if the contract had been fulfilled." *SEG Emps. Credit Union v. Scotts*, 554 S.W.2d 402, 406-07 (Ky. Ct. App. 1977); *see also Hogan v. Long*, 922 S.W.2d 368, 371 (Ky. 1995) ("The measure of damages for breach of contract is 'that sum which will put the injured party into the same position he would have been in had the contract been performed.'" (quoting *Perkins Motors, Inc. v. Autotruck Fed. Credit Union*, 607 S.W.2d 429, 430 (Ky. Ct. App. 1980))). This may include "lost profits, plus compensation for work already performed and expenses incurred." *Ford Contracting., Inc. v. Ky. Transp. Cabinet*, 429 S.W.3d 397, 410-11 (Ky. Ct. App. 2014) (citing *Ellis v. Knight*, 382 S.W.2d 391, 393 (Ky. 1964)). Damages arising from a breach of contract must be proven with reasonable certainty, including loss of anticipated profits. *Id.*; *see also Pauline's Chicken Villa, Inc. v. KFC Corp.*, 701 S.W.2d

399, 401 (Ky. 1985); *Insight Ky. Partners II, L.P v. Preferred Auto. Servs., Inc.*, 514 S.W.3d 537, 553 (Ky. Ct. App. 2016). In other words, "there must be no lack of certainty on account of being too remote, conjectural, and speculative." *Insight Ky. Partners*, 514 S.W.3d at 553 (quoting *Ky. Utilities Co. v. Warren Ellison Cafe*, 21 S.W. 976, 978 (Ky. 1929)).

Plaintiff seeks damages in the form of lost profits for the remainder of the renewed three-year term. Relying on an affidavit of Michael McCarrell, President and Chief Operating Officer of Comprehensive Pharmacy, Plaintiff asserts that its gross revenue for the remainder of the renewed contract term would have been $5,075,855.90. (Doc. # 30) (citing Doc. # 30-3 ¶ 9). Based on Plaintiff's performance in 2016, 2017, and 2018, its projected profit (revenue minus the cost of performance) during that period amounts to $1,105,499.78. (Doc. # 30-3 ¶¶ 9-13). Plaintiff also seeks damages for the amount paid by Comprehensive Pharmacy to its employees, who were prevented from continuing to staff Highlands Hospital as a result of the breach, through the end of their employment contracts—totaling the additional amount of $94,363.39. (*Id.* at ¶¶ 10, 14-15). Thus, the total Plaintiff seeks for Highlands Hospital's breach of the Agreement is $1,199,863.17. (*Id.*).

Defendants do not take issue with Plaintiff's calculation of anticipated lost profit, nor do they challenge Plaintiff's request for the expenses it paid to fulfill its existing employment agreements. However, Defendants do set forth two arguments challenging Plaintiff's entitlement to its asserted damages. First, Defendants argue that Plaintiff's damages should be limited to those arising from the late notice only—*i.e.*, damages it suffered as a result of receiving notice on May 21, 2019 as opposed to by the termination

13

deadline of March 2, 2019.  (Doc. # 35 at 9-12).  Second, Defendants claim that Plaintiff failed to take reasonable steps to mitigate damages arising from Highlands Hospital's breach.  (*Id.* at 12-13).

Defendant's first argument—that Plaintiff's damages are limited to those arising from Highlands' late notice—relies upon a line of cases establishing an exception to the general rule under Kentucky law that a non-breaching party is entitled to damages "sufficient to place that party in the position he would enjoy if the contract had been fulfilled." (*Id.* at 9) (quoting *Ashland, Inc. v. Windward Petroleum*, No. 04-554-JBC, 2006 WL 1913364, at *5 (E.D. Ky. July 11, 2006)).  The exception is as follows: "[w]hen . . . it is the failure to give reasonable notice of termination rather than the termination itself which constitutes a breach of contract, the damages must be limited to that failure." *Ashland, Inc.*, 2006 WL 1913364, at *5 (citing *Pharo Distrib. Co. v. Stahl*, 782 S.W.2d 635, 639 (Ky. Ct. App. 1989)).  In that situation, "[t]he damages must not reflect the loss of a contract or discontinuance of a business relationship but must be limited to those elements directly relating to the lack of notice and the lost opportunity for a plaintiff to 'put his house in order.'" *Id.* (quoting *Pharo Distrib. Co.*, 782 S.W.2d at 639); *see also O'Hara v. Graham*, 166 S.W. 233 (Ky. 1914).

However, Plaintiff is not alleging that Highlands Hospital breached the Agreement by providing delayed notice.  Rather, Plaintiff is seeking damages resulting from Highlands' termination of the Agreement after it had been renewed for a three-year period.  (Doc. # 1 ¶¶ 50-69).  The significance of Highlands Hospitals' failure to provide written notice by March 2, 2019 (ninety days prior to the end of the term, May 31, 2019), is that, at that time, the Agreement was renewed for a three-year period—through May

14

21, 2022.  *See Distillery Rectifying*, 213 S.W.2d at 613.  Thus, by ceasing performance under the Agreement in August 2019, Highlands Hospital reneged on its obligation to pay Comprehensive Pharmacy a monthly fee in exchange for pharmacy services for the remainder of that new, three-year contract term.  That Highlands provided advance notice of its intention to breach the Agreement in late May of 2019 does not alter the nature of the breach.

The cases Defendants cite for the proposition that Plaintiff's damages should be limited to the damages arising from the delayed notice of termination are inapposite.  These cases all involved open-ended contracts that either party could terminate *at any time* so long as they provided advance notice.  *See Ashland, Inc.*, 2006 WL 1913364, at *1 (agreements at issue "were terminable by either party, with or without cause, at any time upon ninety (90) days' written notice); *Pharo Distrib. Co.*, 782 S.W.2d at 638 (noting that "the right to terminate is inherent in the nature of the [at-will] contract" such that "it is the failure to give reasonable notice before the termination that constitutes breach"); *O'Hara*, 166 S.W. at 233 (contract at issue was "to continue until terminated by either of the parties thereto giving to the other 90 days' notice of his intention to terminate the same").  Thus, unlike open-ended contracts where "the right to terminate" at any given time is "inherent in the nature" of the contract, *Pharo Distrib. Co.*, 782 S.W.2d at 638, the Agreement at issue here was for a three-year term with either side having the right to terminate by providing notice ninety days prior to the end of a given term.  This limited right to terminate gave each side the expectation that once the ninety-day notice period had passed, the Agreement would persist for a subsequent three-year term.  Accordingly, as discussed at length above, once March 2, 2019 came and went with neither party

15

providing written notice of termination, assent to renewal was assumed. *See Distillery Rectifying*, 213 S.W.2d at 613. Thus, Plaintiff's damages flowing from Highlands Hospital's subsequent, unilateral termination, effective August 1, 2019, properly include Plaintiff's anticipated profits for the remainder of the renewed three-year term. *See Taurus Capital Mgmt., LLC v. Jetz Laundry Sys., Inc.*, No. 2015-CA-1700-MR, 2017 WL 2392517, at *6 (Ky. Ct. App. June 2, 2017) (finding that damages from breach included lost rental income for full seven-year lease term, as the lease had automatically renewed for a new, seven-year period prior to the breach).

Defendant also argues that Plaintiff has not adequately demonstrated an effort to mitigate damages, or that minimally, a dispute of material fact remains concerning whether Plaintiff took reasonable steps to mitigate damages. (Doc. # 35 at 12-13). It is well established under Kentucky law that "[a] party claiming damages for breach of contract is obligated to use reasonable efforts to mitigate his damages." *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 852 (Ky. Ct. App. 2014). The non-breaching party "cannot stand idly by and permit the loss to accrue or increase, then hold him who breached it liable for the loss which he might have prevented by the use of reasonable efforts, expense, and diligence to prevent, or arrest, the loss." *Sam Stathis & Celebrity Farms v. Lexington Selected Yearling Sales Co.*, Nos. 2019-CA-275 and 2019-CA-370, 2020 WL 3401184, at *5 (Ky. Ct. App. June 19, 2020) (quoting *U.S. Bond & Mortg. Corp. v. Berry*, 61 S.W.2d 293, 298 (Ky. 1933)). Yet, such efforts "need not be unduly risky, expensive, burdensome, or humiliating." *Jones*, 454 S.W.3d at 852. The breaching party bears the burden of demonstrating that the non-breaching party failed to adequately mitigate damages. *Id.*

Michael McCarrell, President and Chief Operating Officer of Comprehensive Pharmacy, stated in his affidavit that Plaintiff "is always engaged in marketing and business development efforts" and that when it became apparent Highlands Hospital planned to breach the Agreement, Plaintiff "made a specific effort to market its services to ARH's various facilities." (Doc. # 30-3 ¶¶ 16-17). McCarrell also testified in his deposition that Highlands Hospital is "constantly marketing the entire country for new business." (Doc. # 38-1 at 9-10). Defendants argue in their Response brief that "[Plaintiff] has not identified any steps it took to mitigate its damages" including "enhanced or particularized [marketing] efforts after" the breach. (Doc. # 35 at 13). Yet, these statements are not supported by the record, which demonstrates that Plaintiff continued to engage in its usual marketing campaigns and tried to re-negotiate its contract with ARH in light of the merger and pending loss of Highlands Hospital's business. In addition, Defendants do not identify any additional steps, in particular, that Highlands could have taken. The law requires only "reasonable" steps to mitigate damages; it does not require "enhanced or particularized" efforts. *Jones*, 454 S.W.3d at 852. Moreover, "an injured party's 'duty to minimize the damages d[oes] not require [the plaintiff] to go so far as to make a new contract' with the breaching party." *Branch Banking & Tr. Co. v. Pac. Life Ins. Co.*, 645 F. App'x 387, 392 (6th Cir. 2016) (alteration in original) (quoting *Ten Broeck Tyre Co. v. Rubber Trading Co.*, 217 S.W. 345, 346 (Ky. 1919)).

Thus, Defendants' conclusory suggestion that Plaintiff could have done more to mitigate its damages is inadequate to create a genuine dispute of fact regarding the reasonableness of Plaintiff's mitigation efforts. *See, e.g.*, *Fifth Third Bank v. Waxman*, 726 F. Supp. 2d 742, 751 (E.D. Ky. 2010) (granting partial summary judgment where the

17

defendant "presented no evidence of 'reasonable' steps that [the plaintiff] should have taken but failed to take in mitigation of its damages"). Based on the record presented, no reasonable jury could find that Plaintiff failed to make reasonable mitigation efforts to limit damages from the breach.

Plaintiff has demonstrated that Highlands Hospital breached the Agreement resulting in lost profits and other expenses, and the Court finds no dispute of material fact related to either the breach or damages. Thus, Plaintiff is entitled to summary judgment regarding its breach of contract claims against Defendants Highlands Hospital and Tug Valley.

### III. CONCLUSION

Accordingly, for the reasons set forth herein,

**IT IS ORDERED** as follows:

(1) Plaintiff's Motion for Partial Summary Judgment regarding Plaintiff's breach of contract claims against Defendants Highlands Hospital and Tug Valley (Counts I and II) (Doc. # 30) is **GRANTED**;

(2) Partial Judgment against Defendants Highlands Hospital and Tug Valley is entered **in the amount of $1,199,863.17**; and

(3) The Court will defer ruling on Defendants' Motion for Partial Summary Judgment (Doc. # 41) pending Plaintiff's submission of a **Status Report** not later than **fourteen (14) days** from the date of entry of this Memorandum Opinion and Order informing of Plaintiff's intention to continue pursuing its remaining tort claims against the Defendants.

This 26th day of March, 2021.



J:\DATA\ORDERS\PikeCivil\2019\19-81 MOO P's Partial MSJ DE 30.docx